## Case No. 1,204.

### BECHTEL'S CASE.[1]

District Court, E. D. Pennsylvania. Dec. 16, 1871; Jan. 29, 1872.

BECHTEL, (BEECHER v.) See Case No. 1,221.

## Case No. 1,205.

### In re BECK.

[25 Leg. Int. 164;[1] 1 N. B. R. 588, (Quarto,) 163; 6 Phila. 475.]

District Court, E. D. Pennsylvania. May 7, 1868.

BANKRUPTCY—PROCEDURE — CLAIM BY JUDGMENT CREDITOR.

1. Where, under an agreement of the execution creditor, the property levied on passes into the possession of the assignee in bankruptcy without prejudice to such prior lien, under the levy, as may be sustainable, the assignee and the register should, if the execution creditor asks it, expedite the proceedings for such a decision.

2. But such proceedings, though summary and informal, should not be conducted by ex parte affidavits, nor otherwise in derogation of the rules of evidence.

[3. Cited in Re Marter, Case No. 9,143, to the point that a conveyance may be an act of

---

[1] [Not previously reported.]

[1] [Reprinted from 25 Leg. Int. 164, by permission.]

bankruptcy, under Rev. St. § 5021, and yet valid as to the grantee, under sections 5128 and 5129.]

[4. Cited in Re Dunkle, Case No. 4,160, to the point that an adjudication of bankruptcy upon an act by a judgment creditor is competent evidence against such creditor in determining the question of the priority of his claim.]

[In bankruptcy. In re Charles E. Beck. Heard on the register's certificate.]

A question having arisen as to an execution creditor's right of priority, which was disputed on the grounds, that his lien was under an execution which, though prior to the proceedings in bankruptcy, was upon a judgment entered on a warrant of attorney given by way of preference, and with intent to defeat and delay the operation of the bankrupt law, and that the bankrupt had procured the execution to be levied. Register Hobart certified that in the course of the proceedings before him the following question arose and was stated and agreed to by the counsel for the opposing parties, viz.: "Whether the facts set forth in the annexed affidavit, if proven, constituted an act of bankruptcy, so as to displace the lien of the execution of James H. Beck, and the levy made thereon, and prevent him from claiming the proceeds of the sale of the goods and chattels levied upon under the said execution, and set forth in the annexed affidavit."

The affidavit referred to was that of James H. Beck, the execution creditor, who deposed that on 29th July, 1867, having heard that a note of the bankrupt had been protested, he called on the bankrupt and urged him to give security, which he refused to do, alleging his ability to go on with his business and pay all his debts, and explaining the protest as having been caused by unexpected disappointments, &c.; that the deponent, not satisfied with the explanation, examined the books of the bankrupt, and becoming convinced that a judgment was necessary for his security, again urged the bankrupt to give him one, promising not to enforce it unless there should be danger; that the bankrupt then declined, but proposed another meeting; that the deponent afterwards sent for the bankrupt and again pressed importunately for a judgment; that the bankrupt finally consented to give a judgment note for the amount of his indebtment, upon the defendant's promise not to enforce it, unless the bankrupt should be pressed by other creditors. The judgment note was accordingly given on the 30th July, 1867, and delivered to the deponent, who kept it until the 20th August, 1867, "when having heard that the creditor whose note had been protested, had commenced a suit upon it," and that judgment would be obtained at the approaching court, which would commence on the first Monday of September, the deponent caused the judgment to be entered on the said 20th August, when execution was issued and a levy made on the

next day. There were general denials of collusion or intent to delay or defeat, &c., with an averment that the only purpose of the deponent was to secure if possible the payment of his claim, and a denial that the bankrupt took "the initiative in the confession of said judgment or in the issuing of the said execution," and a statement that the execution was issued without the knowledge of the bankrupt, who, after it had been issued, applied to the deponent to have it withdrawn, alleging that he could work through his difficulties, &c. The proceedings in bankruptcy were commenced on 29th August, 1867. The petitioning creditor averred another act of bankruptcy, in giving a warrant to confess judgment to another creditor, namely, John O. Beck.

CADWALADER, District Judge. The certificate by the register of a question dated 4th instant, is received this morning. He asks my opinion whether the facts set forth in the annexed affidavit of James H. Beck, if proved, constituted an act of bankruptcy so as to displace the lien of his execution, and of the levy under it, and prevent him from claiming the proceeds of sale of the subjects of the levy.

If the register had reported the facts instead of the evidence of them, the certificate would perhaps have been more regular. But I could not then have answered the question in its present form. They may have constituted an act of bankruptcy on the part of the debtor without necessarily depriving the execution creditor of his lien, because the bankrupt may have intended to give a preference without the creditor's knowledge or intention being such as to implicate him. In the present case the adjudication of bankruptcy may, for aught that I recollect, have been pronounced upon the transaction with John O. Beck, without any intimation of an opinion as to the transaction with James H. Beck. The petitioning creditor alleged that the warrant to confess judgment given to James H. Beck was an act of bankruptcy, and further alleged that the bankrupt procured the property to be taken in execution by the creditor. The latter allegation was that of a distinct act of bankruptcy which if committed, can scarcely have been committed without the creditor's privity. It lies upon the assignee representing the general body of creditors, to impugn the apparently prior lien of this creditor. But in such a case very little evidence may suffice at the outset to shift the burden of proof so as to cast it upon him. Here the fact of the warrant of attorney having been given after the protest of the note of the debtor, which protest was known to the creditor who obtained the warrant of attorney, and the admitted facts which followed, certainly required explanation. Whether Mr. James H. Beck's affidavit suffices to relieve him of the burden thus cast upon him, is a question.

which, if the affidavit were competent evidence, I could not finally decide without hearing an argument. Nor ought such a question to be decided as upon a sort of demurrer to such evidence, without a definite understanding that the evidence on both sides concerning it is closed.

If the place of transaction of the business in this case were less distant, I would add nothing. But as the counsel on both sides may be incommoded by leaving home, I will make two remarks, one of them on the question of preference, the other on that of procuring the property to be taken in -execution. The first remark is that the form of words used in conversations between a debtor and his creditor should be very little regarded where the words were not, in themselves, acts, or inducements to acts. When a debtor's commercial paper has already, with the creditor's knowledge, been protested, the effect of any conversation which follows may be determinable with more or less of reference to the frequency of other intercourse between the debtor and the creditor, and the amount of the latter's knowledge of the details of the former's business. Consanguinity may not be wholly disregarded in weighing the effect of the evidence. A circumstance which may sometimes be regarded is the subsequent continuing knowledge of the creditor, if derived from the debtor, of the movements of other creditors whom the preference may have been intended to defeat. The second remark has, in part, been anticipated in the former connection. This remark is that Mr. James H. Beck, where he deposes that the warrant of attorney of 30th July, 1867, was kept by him until 20th August, 1867, when he heard that the creditor whose note was protested had commenced suit upon it, does not state from, or through, whom, this information was obtained. If it was obtained from, or through, the bankrupt, the fact may not be unimportant.

In administering this part of the business of a case in bankruptcy, the ex parte affidavit of a witness ought not to be received, much less that of a party himself whom the act of congress of 1864 [Rev. St. § 858] makes a witness. Had Mr. James H. Beck been examined by way of deposition, and had he, after cross-examination by the counsel of the assignee, disclosed nothing more than appears in the affidavit before me, the register would probably, in taking the depositions, have asked certain questions to elicit more complete information. Every facility should be afforded to Mr. James H. Beck in obtaining a prompt adjudication of the question upon his claim of priority. The register is authorized to investigate it. His report upon it will be subject to exception. Such a report should be made as soon as the evidence on the part of Mr. Beck and the assignee shall have been fully adduced, and the question argued by counsel. If I have overlooked the intended point of the question submitted by the register, he may restate it. A statement of his own impressions upon it, or of his reasons for presenting it, would not have been out of place in the certificate which he has already furnished.